## Northern Electrical Manufacturing Company, Appellant, *v.* Columbia Brewing Company.

*Mechanic's lien—Notice of intention to file—Ascertainment of time—Acts of June 4, 1901, P. L. 431, and April 17, 1905, P. L. 172.*

1. The question whether the notice required to be given by a contractor to the owner of an intention to file a mechanic's lien, has been served within the statutory period, is to be determined by the facts averred in the claim as filed, and not from matters outside of the record.

2. The court of common pleas will not be justified in striking out and disregarding as defective the last two items of a mechanic's claim so as to leave all the earlier items subject to the objection that the notice of the intention to file a lien, was not served in time, where it appears that the alleged defective items are fully explained by the contract attached to the claim as filed and by the averments in the body of the claim.

Argued Dec. 6, 1910.   Appeal, No. 18, Oct. T., 1910, by plaintiff, from order of C. P. Schuylkill Co., March T., 1909, No. 1, making absolute rule to strike off mechanic's lien in case of The Northwestern Electrical Manufacturing Company v. The Columbia Brewing Company, Owner, and the Wilkirk Electric Company, Contractor.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Rule to strike off mechanic's lien.   Before BECHTEL, J.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was order striking off lien.

*Louis B. Runk,* with him *E. W. Shoemaker, John R. Read* and *H. B. Gill,* for appellant.—The alleged defective items were fully explained by the claim: Day v. R. R. Co., 224 Pa. 193; American Car & Foundry Co. v. Water Co., 215 Pa. 520; Soffel Co. v. Jones, 17 Pa. Dist. Rep. 790.

The mere fact that one item in a lien is bad, gives the

court no warrant to strike off the whole lien: McCristal v. Cochran, 147 Pa. 225; Young v. Elliott, 2 Phila. 352.

*A. W. Schalch*, with him *John R. Coyle*, for appellee.— Cited as to notice: Collins v. R. R. Co., 29 Pa. Superior Ct. 547; Wolf Co. v. R. R. Co., 29 Pa. Superior Ct. 439; Keely v. Jones, 35 Pa. Superior Ct. 642; Hart v. R. R. Co., 41 Pa. Superior Ct. 224; Knelly v. Horwath, 208 Pa. 487; Tenth Nat. Bank v. Smith Constr. Co., 218 Pa. 581; McVey v. Kaufmann, 223 Pa. 125.

Cited as to the lumped charges: Lee v. Exeter Club, 9 Pa. Superior Ct. 581; Brown v. Myers, 145 Pa. 17; McFarland v. Schultz, 168 Pa. 634; Wharton v. Investment Co., 180 Pa. 168; American Car & Foundry Co. v. Alexandria Water Co., 215 Pa. 520.

OPINION BY PORTER, J., June 13, 1911:

The plaintiff appeals from an order of the court below striking off a mechanic's lien. The ground upon which the learned judge of the court below based his action was that the notice given by the appellant to the owner of an intention to file this lien had not been served in time. The claim as filed averred that written notice of the intention to file the lien had been duly served upon the owner on October 27, 1908, and that it was so served is not questioned. Whether service upon that day was in time is, for present purposes, to be determined by the facts averred in the claim as filed, and not from matters outside of the record: Thirsk v. Evans, 211 Pa. 239; Burger v. Moss Cigar Co., 225 Pa. 400; Hiestand v. Keath, 229 Pa. 149. The eighth section of the Act of June 4, 1901, P. L. 431, requires subcontractors to serve the owner of the building with written notice of an intention to file a claim within three months after the last of his work was done or materials furnished and the eleventh section of the same statute, as amended by the Act of April 17, 1905, P. L. 172, requires that the lien, when filed, must set forth when and how service of such notice has been made upon the owner: Bametzrieder v. Canevin, 44 Pa. Superior Ct. 18. The

court below held the averment of the claim as to the
time of the service of the notice upon the owner to be
sufficient and, for the purposes of the motion then pending,
accepted as an established fact the service of the notice
on October 27, 1908. The court, however, was of opinion
that the claim as filed failed to sufficiently aver any item
for materials furnished or work done later than May 13,
1908, which date was more than three months prior to the
date of the service of the notice, and for that reason struck
off the lien.

The court in reaching this conclusion held that the last
two items in the bill of particulars, which was embodied in
the lien, were so defectively set forth that they must be
stricken out and disregarded, and the striking out of these
items left all the earlier charges in the bill of particulars
subject to the objection that the notice was not served in
time. The charges which the court thus held must be
eliminated were (1) "1908, May 27th to August 12th, Cost
of erection in the building at Shenandoah, Pa. $100.00" and
(2) "September 3rd, To putting in new filler on ends of
frames $2.00." If these items stood alone, without explan-
ation concerning them, the question here presented might
not be without difficulty, but they did not stand alone and
they were fully explained in the body of the claim. The
plaintiff had attached to and made part of its claim as
filed, the contract between it and the principal contractor,
which was in writing. That contract and all the averments
of the body of the claim are to be considered in determin-
ing whether or not the items, which the learned judge of
the court below held must be stricken out, were sufficiently
averred as matters constituting a lien and as of the time
stated in the bill of particulars, and whether it suf-
ficiently appeared from the averments of the claim that
any work and materials, which were the subject of lien,
had been done and furnished within three months prior
to the service of the notice: American Car & Foundry Co.
v. Alexandria Water Co., 215 Pa. 520. The claim was
filed to secure a lien for the balance due for the construc-

tion, erection and installation in the building of two electric generators for light and power service. The written contract required the appellant, whose manufacturing establishment was in the state of Wisconsin, to deliver and erect these generators "at the plant of the Columbia Brewing Company, Shenandoah, Pennsylvania," for the lump sum of $3,110. The mere finishing of the parts of these two machines at the factory of the plaintiff, in the state of Wisconsin, did not complete a delivery of the materials to the building or to the principal contractor, under the terms of this contract. The appellant was required not only to deliver the parts of these machines at Shenandoah, Pa., but he was required to assemble those parts so as to constitute two distinct and complete machines and install those machines ready for operation in the building of the brewing company. The erection and installation of the electric generators, in the building of the appellee, was necessary to complete the contract, and the date of the completion of that work would be the time of the final delivery to the building. The claim set forth the written agreement to furnish the two generators for a lump sum and distinctly stated the undertaking of the appellant to erect the machines in the building of the appellee, ready for operation. There was attached to the contract detailed specifications, which fully informed the owner of the building the precise manner in which the machines were to be constructed and gave all necessary information as to the materials of which they were composed, and the claim distinctly averred that the work was done in accordance with the contract. The statements of the claim embraced, perhaps, unnecessary details as to the manner in which the appellant proceeded to execute this contract; it stated that the pieces which when put together made up the component parts of the two generators, "with a field rheostat for each of them, being contained in five boxes of an aggregate weight of 22,303 pounds," were shipped by prepaid freight from Madison, Wisconsin, on May 13, 1908. It averred that the prices for said sepa-

rate pieces of the machines, "so far as the same can be separately stated being as follows (the dates for all the items except the last one being the dates of shipment and not the dates of actual delivery, nor indicating the time of the completion of the erection of the generators in the building);" and then follows the bill of particulars, stating the several parts of which each machine was composed, and the estimated value thereof at the point of shipment, all of the dates of said items being given as May 13, 1908. It thus clearly appears on the face of the lien that these dates are the date of shipment from the factory and not the date when the erection and installation of the generators had been completed at the building of the appellees. There appears in this bill of particulars an item, charged as of May 13, "Freight prepaid on the entire shipment as above $110." Following all these come the two items which the court below held must be stricken from the lien. The item for the cost of erection of the machines in the building, from May 27 to August 12, would be subject to the objection that it was a lumping charge for $100, if it were presented as a distinct item of claim. This is not here, however, presented as a distinct item of claim; the purpose of its introduction was to clearly reveal to the defendants precisely what had been done under the lumping contract to furnish and erect two completed machines ready for operation. The final item "1908, September 3rd, To putting in new filler on ends of frames $2.00," manifestly refers to the frames mentioned in the specifications which were a part of the written contract. The claim distinctly avers that all the items in the bill of particulars, which necessarily includes the item in question, were furnished under the written contract, and the aggregate of the items set forth in the bill of particulars is $3,110, the exact amount of the contract price for furnishing the two electric generators. The claim avers that the contract for the machines furnished fixed the price at the lump sum of $3,110. The bill of particulars gives in detail the items of material and work furnished and the aggregate value of these various

items corresponds with the lump sum mentioned in the contract. This gave all the information that the appellees needed to enable them to deal intelligently with the claim and protect themselves. The owner can readily ascertain, if he desires to know, whether or not the contract price was exorbitant and beyond the fair value of the materials agreed to be furnished: Willson v. Canevin, 226 Pa. 362. The machines were to be erected and were erected in the building at Shenandoah and whether the contract price was exorbitant would depend upon their value at that place, and the consideration of this question would necessarily involve what it would reasonably cost to transport the machines to that place and there erect them. The claim having sufficiently averred that the item of September 3 was furnished under the contract, it cannot be said to clearly appear that this allegation was not well founded, nor can it be confidently asserted that this work was not necessary to complete the contract. When a contract is made with a man about the business of his craft the usages of that trade enter into and are a part of the contract. We frankly confess that we do not know the meaning of the term "filler on the ends of frames," when used with reference to an electric generator. We cannot say whether it is necessary that the putting in of the filler should be deferred until the last thing before the machine is ready for operation, nor how the ends of the frames should be protected during the course of transportation and erection of the generator. Whether the introduction of this item in the bill of particulars was proper under the contract, or was a mere subterfuge can only be determined by a jury. Independently of this item, however, the claim distinctly avers that the work of erection and installation of the generators was completed on September 3, 1908, and there is nothing upon the face of the claim to impeach this averment. We are of opinion that the court erred in striking off the lien.

The order of the court below is reversed, the lien is reinstated, and the record is remitted for further proceedings.